UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DAMARIS H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 6:20-cv-6801-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Damaris H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 15. Plaintiff also filed a reply brief. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED**.

## BACKGROUND

In what appears to be her fourth application for benefits, Plaintiff protectively filed an application for SSI on October 20, 2017, alleging disability beginning July 1, 2010 (the disability onset date), due to post-traumatic stress disorder ("PTSD"), depression, anxiety, fibromyalgia,

degenerative disc disease, substance abuse, and endometriosis. Transcript ("Tr.") 139-44, 163.[1]

Plaintiff's present claim was denied initially on December 28, 2017, after which she requested an

administrative hearing. Tr. 10. On October 22, 2019, Administrative Law Judge Aaron M. Morgan

("the ALJ") held a hearing in Rochester, New York. Tr. 10. Plaintiff appeared and testified at the

hearing and was represented by Peter Siracuse, a non-attorney representative. *Id*. Sakinah A.

Malik, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on November 15, 2019, finding that Plaintiff was

not disabled. Tr. 10-20. On August 6, 2020, the Appeals Council denied Plaintiff's request for

further review. Tr. 1-6. The ALJ's November 15, 2019 decision thus became the "final decision"

of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.   §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

---

[1] As the ALJ noted, Plaintiff has a history of prior unfavorable disability applications. Tr. 10; *see* Tr. 62, 175. Plaintiff filed a Title II disability application on April 21, 2007, that was denied initially on September 18, 2017. Thereafter, she filed a request for hearing, that was dismissed on March 26, 2010, for failure to appear at the scheduled hearing. Plaintiff filed Title II and Title XVI disability applications on July 11, 2012. These claims were denied initially on October 17, 2012, and Plaintiff did not appeal further. Plaintiff filed a Title XVI disability application on August 11, 2015, that was denied at the initial level on November 13, 2015, with no further appeal filed. The ALJ explained that there was no basis to reopen any of these prior determinations under 20 CFR 404.988 or 416.1488. Tr. 10.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 15, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since October 20, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following "severe" impairments: obesity, fibromyalgia, depression, post-traumatic stress disorder ("PTSD"), an anxiety disorder, and a history of opiate addiction (on Methadone maintenance) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[2] except she cannot climb ropes , ladders, or scaffolds; she can climb stairs, balance, stoop, kneel, crouch, and crawl no more than occasionally; she is limited to jobs involving simple, routine, repetitive tasks with up to 3-step commands, and no more than occasional changes in the work setting, no more than occasional judgment or decision making, and no more than occasional interaction with the general public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant is a younger individual (age 18-49) (20 CFR 416.963).

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a "disability", as defined in the Social Security Act, since October 20, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 10-20.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on October 20, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 20.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ failed to properly reconcile the psychiatric opinions of mental health counselor Tricia Wyjad, LCSW ("Ms. Wyjad"). *See* ECF No. 13-1 at 11-14. According to Plaintiff, although the ALJ found Ms. Wyjad's opinions persuasive and purported to use them in crafting Plaintiff's RFC, Ms. Wyjad's opinions indicate more significant limitations than assessed in the RFC. *See id*. Plaintiff next argues that the ALJ failed to properly evaluate the opinions of internal medicine consultative examiner Harbinder Toor, M.D. ("Dr. Toor"), treating physician Basya Herbert, M.D. ("Dr. Herbert"), and treating physician Natercia Rodrigues, M.D. ("Dr. Rodrigues"), as they relate to Plaintiff's fibromyalgia. *See id*. at 14-18.

The Commissioner argues in response that substantial evidence supports the ALJ's analysis of Ms. Wyjad's opinions, and her assessment of moderate limitations in some mental functions

does not mean that Plaintiff is totally disabled. *See* ECF No. 15-1 at 21-25. With respect to Plaintiff's second point of error, the Commissioner argues that substantial evidence supports the ALJ's analysis that Plaintiff's fibromyalgia would not preclude a range of light work because, despite a diagnosis of fibromyalgia, objective findings indicated that the condition was not totally disabling. *See id.* at 25-31.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately analyzed the opinion evidence, including the conflicting opinion evidence, and was reasonably more persuaded by the opinions indicating that Plaintiff was still capable of light work with appropriate restrictions. Other substantial evidence, including Plaintiff's treatment records, her activities of daily living, and her own statements about her functional abilities also supports the ALJ's RFC determination. Because substantial evidence supports the ALJ's decision, the Court finds no error.

Treatment records indicate a history of mental health treatment at Strong Behavioral Health ("Strong") and Genesee Mental Health ("Genesee") since at least 2017, including Methadone maintenance treatment. Tr. 211-341; 824-1105. Prior to 2017, Plaintiff received treated mental health treatment at Evelyn Brandon Mental Health Clinic. Tr. 343-80. Prior to and through her SSI application date, Plaintiff received care at Huther Health Clinic ("Huther"). *See* Tr. 406-87.

On July 6, 2015, Plaintiff was scheduled for a complete physical examination with family medicine practitioner Suzanne Brendze, M.D. ("Dr. Brendze"), but Plaintiff said she "[wasn't] prepared for [a complete physical] [that day]." Tr. 485. Plaintiff reported having multiple sources of pain and "horrific" burning pain in her right scapular area. *Id*. She stated that her prior clinic diagnosed fibromyalgia, but she left because her physician "didn't like [her]." *Id*. She inquired about a Lyrica prescription and said she wanted "to do something about her low back pain and sciatica, 'like PT, eventually,' but has a lot of other things going on right now." Tr. 485. On physical examination, Plaintiff was in no apparent distress. Tr. 486. She had a decreased range of motion in her neck. *Id*. She had "tenderness wherever she is touched," increased tenderness in the scapular area with palpable muscle spasm and mild swelling, and slightly less grip strength on the left and normal on the right. *Id*. On mental status examination, Plaintiff was alert and oriented with appropriate affect and demeanor. *Id*. Dr. Brendze prescribed Cyclobenzaprine HCl for short-term use for the muscle spasm and gave Plaintiff a handout on yoga for fibromyalgia. Tr. 487.

In August 2015, Plaintiff reported to Dr. Brendze that she was previously recommended to do physical therapy for her lower back and leg pain, but "it was too much for her at three times a week in addition to her recovery program three times a week." Tr. 482. Plaintiff mentioned to Dr. Brendze that she previously took Lyrica which she brought with her to the visit that day. *Id*. Dr. Brendze noted that Plaintiff initially had an appropriate affect and demeanor, but then became upset by not having Lyrica prescribed at that visit. Tr. 483. Dr. Brendze prescribed Lyrica when Plaintiff returned in September. Tr. 480-81.

In November 2015, Plaintiff asked Dr. Brendze to complete paperwork for DHS and also stated that she had an SSI application pending. Tr. 476. On examination, Plaintiff was in no apparent distress, had a normal gait, and on mental status exam, had an appropriate affect and

demeanor. Tr. 476. Dr. Brendze reviewed Plaintiff's recent MRI of the lumbosacral spine and observed that it showed no nerve root compression or spinal stenosis. Tr. 476-77. In a DHS employability form, Dr. Brendze indicated that Plaintiff was very limited in almost all functions except moderately limited in sitting and not limited in seeing, hearing, and speaking, and indicated that Plaintiff could not participate in work activities for six months. Tr. 576, 578.

On February 1, 2016, orthopedist John Orsini, M.D. ("Dr. Orsini"), completed a DHS employability form stating that Plaintiff had no evidence of limitations in any functional areas. Tr. 570-73. Dr. Orsini recommended low impact aerobics for Plaintiff's complaints of radiating low back pain. Tr. 572. In May 2016, Plaintiff told Dr. Brendze she was disappointed with Dr. Orsini because he was "dismissive" and "did not listen to her history." Tr. 472. Plaintiff wanted a higher Lyrica dosage, which Dr. Brendze prescribed. Tr. 472-73.

Plaintiff returned in June 2016 "to address paperwork for DHS." Tr. 469. She reported having short and long-term memory problems, which she attributed to Methadone, and hoped to taper it off slowly. Tr. 469. Plaintiff reported that she walked three to four blocks before stopping for a minute; stood for 15 minutes at a time; sat for 15 minutes at a time because her legs would get numb; could occasionally lift about 10 pounds; could push minimal weight while standing; and could not bend without pain. *Id*. On physical examination, Plaintiff was in no acute distress; she had a normal gait; positive tenderness at "random" trigger points; globally decreased range of motion in the back due to pain; and weakness with left leg extension. Tr. 470. On mental status examination, she was alert and oriented and had an appropriate affect and demeanor. *Id*. Two days later, Dr. Brendze completed another DHS employability form stating that Plaintiff could not participate in work activities for six months (Tr. 563) and again checked boxes indicating that Plaintiff was very limited in almost all functions except moderately limited in sitting and not

limited in seeing, hearing, and speaking (Tr. 565). Plaintiff continued treating with Dr. Brendze with visits in July and October 2016 showing unremarkable findings, including no apparent distress, normal gait, and normal mental status. Tr. 465, 467. On October 18, 2016, Plaintiff reported that she had her first back-to-work training program; and she wanted to work with women in the community. Tr. 465.

Beginning in February 2017, Plaintiff started seeing family medicine practitioner Dr. Herbert at Huther. Tr. 457-60.  Plaintiff again reported constant back pain and stated that she was considering mobility devices due to difficulties with standing, sitting, and walking. Tr. 457. On examination, Plaintiff seemed to be in moderate pain and appeared tired. Tr. 458. She had tenderness "in the low back area/fibromyalgia areas." Tr. 458. She appeared anxious and depressed, and otherwise was appropriate, cooperative, pleasant, and had intact memory. Tr. 458. She had a normal gait. Tr. 458. Dr. Herbert referred Plaintiff for physical therapy and increased Lyrica. Tr. 460. On April 28, 2017, Dr. Herbert provided a medical opinion as to Plaintiff's physical limitations, opining that Plaintiff was "very limited" in walking, standing, sitting, pushing, pulling, bending, lifting and carrying (able to perform only one to two hours a day). Tr. 552.

Plaintiff began seeing Ms. Wyjad at Genesee beginning in April 2017. *See* Tr. 234-97. Ms. Wyjad noted that Plaintiff had been discharged from her prior mental health provider due to noncompliance. Tr. 279. However, Plaintiff stated that she did not agree with her discharge and reported an ongoing need for treatment due to symptoms of depression, anxiety, difficulty going out, and preoccupations with "completing tasks which interferes with timeliness," such as washing herself and arranging her clothing so the labels all faced out. Tr. 279-80. On mental status examination, Plaintiff had a depressed mood and ruminative thought content; however, the rest of

the mental status exam showed unremarkable findings, including good attention and concentration. Tr. 283. In a follow-up visit later that month, Plaintiff mentioned symptoms including lack of motivation and stated she "hope[d] to resume employment in the near future." Tr. 236.

On July 31, 2017, Ms. Wyjad provided a psychological assessment for determination of employability for Monroe County Department of Human Services ("DHS"). Tr. 545-47. Ms. Wyjad opined that Plaintiff was "moderately limited (defined as unable to function up to 25% of the time) in following, understanding and remembering simple instructions and directions; performing simple and complex tasks; maintaining attention and concentration for rote tasks; and regularly attending to a routine and maintaining a schedule. Tr. 547. She indicated that Plaintiff could work ten hours per week with reasonable accommodations for six months. *Id*.

In August 2017, Plaintiff started attending group therapy sessions at Strong in connection with her substance abuse treatment. Tr. 299-341.On August 29, 2017, Plaintiff saw Gloria Baciewicz, M.D. ("Dr. Baciewicz"), for a psychiatric evaluation. Tr. 301. On mental status examination, Plaintiff's thought content had "no unusual themes" except Plaintiff discussed difficulties getting ready in the morning due to a fear of having body odor, and she had chronic passive death ideation without a plan or intent. Tr. 303. Plaintiff otherwise engaged well and had a cooperative manner, normal gait and movements, normal thought processes, intact insight and good judgment, intact memory, normal speech, a euthymic mood with a full range and appropriate affect, and good attention and concentration. Tr. 303. Dr. Baciewicz recommended continuing Plaintiff's Cymbalta prescription. Tr. 304.

In group therapy sessions on August 30 and September 6, 2017, Plaintiff mentioned that she was looking into obtaining more credits for her degree and looking into volunteer work. Tr. 306-07. On October 19, the day before her SSI application date, Plaintiff discussed "wanting to

work in order to have financial independence but knowing that her pain limits the type and the amount of work she can do." Tr. 328.

On October 30, 2017, ten days after the SSI application date, Plaintiff attended an annual physical examination in connection with Methadone treatment. Tr. 224. A review of systems was positive for dysuria, and negative for musculoskeletal, neurological, or psychiatric symptoms. Tr. 224. On examination, Plaintiff had normal musculoskeletal, neurological, and psychiatric findings. Tr. 224.

The same day, Plaintiff mentioned to Ms. Wyjad that she had applied for Social Security benefits and reported ongoing depressive symptoms, anxiety, and low self-esteem, although she had been "getting out of the house easier" and going out regularly. Tr. 276. Ms. Wyjad noted that Plaintiff had her Methadone dose that day and was visibly sedated near the end of the session; Plaintiff commented that "it is challenging to apply for employment knowing that the methadone makes her groggy at time of the day," but she also stated that she was tired not because of Methadone but because she did not sleep well. Tr. 276. Plaintiff "hopes [she] will be approved for SSI, but is prepared to search for employment if she is denied." Tr. 276.

Plaintiff returned to Dr. Herbert on November 14, 2017, to discuss smoking cessation. Tr. 406. She also mentioned that she was going to start the process for a bariatric procedure. Tr. 406. On examination Plaintiff appeared anxious, but otherwise the examination showed unremarkable findings. Tr. 407. Dr. Herbert added Wellbutrin SR to Plaintiff's prescriptions. Tr. 409.

Dr. Toor performed a consultative physical examination on November 30, 2017. Tr. 395-98. Plaintiff was 5 feet 3 inches tall and weighed 218 pounds. Plaintiff reported having degenerative disc disease for many years with constant, sharp pain at 10/10 that radiated to both legs. Tr. 395. She also reported having fibromyalgia with dull, achy, on-and-off pain at 6/10 in the

neck and shoulders. *Id*. She reported that her pain was worse with walking, sitting, bending, and lifting; she sometimes lost her balance; and she had difficulty twisting the cervical spine. *Id*. On examination, Plaintiff presented in moderate pain. Tr. 396. She had a cane which she said was prescribed by a physician; her gait was abnormal and slightly unsteady with and without the cane. *Id*. Plaintiff declined heel-to-toe walking or squatting and could not stand more than a few minutes without the cane and needed it for standing and walking. *Id*. She exhibited difficulty getting out of a chair and getting on and off the examination table. *Id*. She had limited range of motion in the spine, positive straight leg raise testing, and fibromyalgia tender points in the cervical spine, gluteal, trochanter region, and the knees bilaterally. Tr. 397. The remainder of the examination was unremarkable showing normal strength in the extremities, normal sensation and reflexes, intact hand and finger dexterity, and no muscle atrophy. Tr. 398. Dr. Toor assessed moderate to marked limitations in standing, walking, bending, lifting, and carrying, pain that interfered with balance, and a moderate limitation in sitting "a long time." Tr. 398.

Plaintiff also attended an evaluation with consultative psychiatric examiner Adam Brownfeld, Ph.D. ("Dr. Brownfeld") on November 30, 2017. Tr. 401-04. Plaintiff reported symptoms including short-term memory deficits, concentration difficulties, and palpitations, sweating, and breathing difficulties around crowds of people. She reported that she lived alone, but her husband came over to help with activities of daily living. Tr. 401. On mental status examination, Plaintiff had impaired attention and concentration; she was able to count and do simple calculations and serial threes correctly, but not serial sevens. Tr. 402. The rest of the mental status examination showed unremarkable findings. Tr. 402-03. Dr. Brownfeld assessed mild limitations in applying complex directions and instructions, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at

work, and regulating emotions, controlling behavior, and maintaining well-being; and had no limitations in other areas of mental functioning, including for simple tasks, work-related decisions, and interacting with others. Tr. 403.

On December 6, 2017, state agency psychological consultant D. Brown, Psy.D. ("Dr. Brown"), assessed that Plaintiff did not have a severe mental condition, *i.e.*, did not have a condition that significantly limited basic work activities. Tr. 66.

On December 28, 2017, state agency medical consultant R. Abueg, M.D. ("Dr. Abueg"), assessed that Plaintiff was capable of functions consistent with light work. Tr. 68-69.

On January 23, 2018, Ms. Wyjad provided another psychological assessment for DHS. Tr. 541-43. She again opined that Plaintiff was "moderately limited in following, understanding and remembering simple instructions and directions; performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; and performing low stress and simple work. Tr. 543. She indicated that, subject to accommodations for a slow pace, minimal demands, and a flexible supervisor, Plaintiff could work only 15 hours a week for six months. Tr. 543-44.

On February 22, 2018, Plaintiff saw Dr. Rodrigues to establish primary care after Huther "closed to non-suboxone patients." Tr. 842. Plaintiff reported having endometriosis, fibromyalgia, and chronic back pain, and taking a lot of Ibuprofen daily, as well as Cymbalta, Lyrica, and Clonidine. Tr. 842. On examination, Plaintiff was in no acute distress and had a normal mood and affect. Tr. 845. Dr. Rodrigues refilled Plaintiff's various prescriptions. Tr. 845-46.

On March 22, 2018, Dr. Rodrigues completed an employability assessment for DHS. Tr. 536-39. Dr. Rodrigues assessed that Plaintiff was "very limited" in walking, standing, sitting,

pushing, pulling, bending, seeing hearing, speaking, lifting and carrying, *i.e.*, only being able to function one to two hours a day. Tr. 539.

In March and April 2018, Plaintiff told Ms. Wyjad she was planning to return to school and pursue college. Tr. 627. At another April 2018 visit, Plaintiff mentioned that she planned to focus her attention on positive activities, and she was volunteering at a church near her house; in May 2018, she reported that she noticed a benefit from her church volunteering. Tr. 615, 619, 786. In June 2018, Plaintiff mentioned that she was considering looking for work. Tr. 606. In a July 2018 visit with Dr. Baciewicz, Plaintiff mentioned being involved with vocational rehabilitation services and said she "[w]ould like to work in human services." Tr. 905. In her May 2018 group therapy session, Plaintiff stated that her goals included "joining the Y; find out about getting a bike; . . . continued volunteer work." Tr. 876.

In a November 2018 group therapy session, Plaintiff mentioned that she was thinking about pursuing inpatient treatment because she had been unable to stop smoking marijuana. Tr. 975. In December 2018, Plaintiff told Dr. Baciewicz that she took Cymbalta "off and on" due to nausea and wanted to restart it or something else due a to a recurrence of symptoms; Dr. Baciewicz restarted Cymbalta and added Prazosin for nightmares. Tr. 986, 1034-38, 1056-61, 1100-05. In a February 2019 therapy session, Plaintiff indicated that getting sanctioned by DSS might be a good thing for her so she "could move on the next chapter in her life," such as going back to school and "get[ting] a job in the Human Services field and being able to help other people.". 1016.

Plaintiff saw Dr. Rodrigues on April 4, 2019, complaining of "urinary symptoms." Tr. 1044. She also reported numbness and tingling along her neck, often on her right side but recently on her left down to her elbow. *Id*. On examination, Plaintiff was in no apparent distress. Tr. 1045. She had left-sided CVA tenderness, a full range of motion in her neck and left arm, and full

strength. Tr. 1045. Dr. Rodrigues prescribed a Toradol injection in addition to Flexeril, and a future MRI for the cervical spine. Tr. 1046.

On April 11, 2019, Plaintiff told Ms. Wyjad that "she [was] seeking employment or something to do with her time and [was] feeling depressed with down time." Tr. 693. Ms. Wyjad discussed referrals to a program and "discussed career and social tracks," but Plaintiff thought this would be "too much" and stated that she was working with a career specialist through East House. Tr. 693.

In a June 2019 therapy visit, Plaintiff expressed an interest in increasing physical activity over the summer, specifically by biking. Tr. 1071. Later that month, Plaintiff planned to visit a college admissions department to inquire what she needed to do to apply for the fall semester. Tr. 1075. In July 2019, Plaintiff mentioned linking with a case manager to assist her with school. Tr. 678. Ms. Wyjad discussed the benefit of enrolling in classes which could offer Plaintiff "distraction and sense of achievement." In September 2019, Plaintiff mentioned that she was "looking forward to an SSI hearing." Tr. 671.

On October 3, 2019, Dr. Rodrigues completed a medical source opinion form on behalf of Plaintiff's disability claim. Tr. 1106-07. She noted that Plaintiff had been seen on five visits since February 2018. Tr. 1106. Dr. Rodrigues opined that Plaintiff's pain would "constantly" be enough to interfere with attention and concentration. *Id*. She further opined that Plaintiff could never lift even less than ten pounds and could not perform any postural activities. *Id*. She also opined that Plaintiff could sit, stand and walk less than two hours each; she could only sit for ten minutes at one time and stand for five minutes; and would miss more than four days per month due to impairment or treatment. Tr. 1107. Dr. Rodriguez additionally commented that Plaintiff was "unable to work due to disabling pain." *Id*.

15

As noted above, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ erred in his assessment of the opinion evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27,

2017). Plaintiff filed her application on October 20, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff was still capable of light work with appropriate restrictions,

including to only simple tasks and only occasional changes, decision-making, and interaction with the public. Tr. 14-18.  *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff first argues that the ALJ erred in his consideration of the opinions from Ms. Wyjad. *See* ECF No. 13-1 at 10-14. The ALJ explained that he found Ms. Wyjad's opinions "persuasive" because "[s]he has treated the claimant since March 2017 and is familiar with the claimant's symptoms, response to treatment, and daily activities."  Tr. 18. As the ALJ noted, Ms. Wyjad completed medical source statements on July 31, 2017 and January 23, 2018, both of which cite the same moderate limitations for following, understanding, and remembering and performing simple and complex instructions and directions, maintaining attention and concentration, and regularly attending to a routine and maintain a schedule limitations. Tr. 17, 545-547, 541-543. Although the ALJ went on to explain that he used Ms. Wyjad's medical source statement in formulating Plaintiff's mental limitations in the RFC (*see id.*), Plaintiff argues that the limitations assessed by Ms. Wyjad are greater than the RFC limitations assessed by the ALJ. *See* ECF No. 13-1 at 10-14 (citing Tr. 545-47, 541-43).

Contrary to Plaintiff's argument, the ALJ was not compelled to view Ms. Wyjad's assessment of moderate limitations as commensurate with total disability. Notably, a finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding that a limitation to unskilled work accounted for the claimant's moderate limitations in concentration, persistence, and pace); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding that ALJ's determination that claimant could perform simple work tasks was well supported where "None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see also Snyder v. Saul*, 840 F. App'x

641, 643 (2d Cir. 2021); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020); *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019). Here, the ALJ reasonably incorporated Ms. Wyjad's assessment of moderate limitations into Plaintiff's RFC by limiting her to only simple tasks and only occasional changes, decision-making, and interaction with the public. Tr. 14.

In addition to finding Ms. Wyjad's assessments consistent with the ability to perform some work subject to appropriate mental restrictions as incorporated in the RFC finding, the ALJ also reasonably relied on the assessment of consultative psychiatric examiner Dr. Brownfeld. Tr. 14, 17-18. The ALJ found Dr. Brownfeld's opinion persuasive because he based his conclusions on the objective mental status examination findings and on Plaintiff's reported activities of daily living. Tr. 18. The ALJ similarly found the opinion of state agency medical consultant Dr. Abueg persuasive because it was consistent with the "rather minimal positive findings in the record" and Plaintiff's daily activities. *Id*. On the other hand, the ALJ explained that he did not find the opinion of state agency psychological consultant Dr. Brown persuasive, as his conclusion that Plaintiff had no significant mental limitations was inconsistent with the findings of Dr. Brownfeld and the treatment notes of Ms. Wyjad. *Id*.

Other evidence of record also supports the conclusion that the ALJ was not compelled to interpret Ms. Wyjad's opinions as restrictively as Plaintiff's argues. Treatment records, including Ms. Wyjad's own sessions, showed essentially benign mental status examination findings. Tr. 583-726. *See* 20 C.F.R. § 416.902(l) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."). As an example, the ALJ noted that treatment notes from Ms. Wyjad from March 2017 to September 2019 (Tr. 233-97, 583-659) indicate that although

Plaintiff's mental status examinations have shown a depressed and anxious mood, her examinations were otherwise consistently within normal limits. Tr. 17.

Furthermore, in her visits with Ms. Wyjad, Plaintiff repeatedly discussed her plans to attend school and look for work, and also mentioned her volunteering activities. Tr. 276, 606, 615, 619, 627, 678, 693. Ms. Wyjad's treatment notes and assessments also indicate that Ms. Wyjad believed that Plaintiff was capable of at least some work activity, and mostly encouraged such activities. Tr. 276, 543, 547-48, 606, 615, 619, 678, 693. *See Poupore*, 566 F.3d at 305 ("Dr. Black consistently stated in his reports that Poupore was not disabled from all work, but rather would be an excellent candidate for vocational rehabilitation").

Based on the foregoing, the ALJ reasonably incorporated Ms. Wyjad's assessment of moderate limitations for following, understanding, and remembering and performing simple and complex instructions and directions, maintaining attention and concentration, and regularly attending to a routine and maintain a schedule into the RFC finding. Tr. 17, 545-47, 541-43. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that, under the substantial evidence standard, the ALJ's decision is sufficient as long as a reviewing court can "fathom the ALJ's rationale in relation to evidence in the record . . . ."). Accordingly, the Court finds no error.

In her second point of error, Plaintiff argues that the ALJ failed to properly evaluate the opinions of Drs. Toor, Herbert, and Rodrigues,[3] "in the context of fibromyalgia—a pain disorder characterized by a lack of objective findings." *See* ECF No. 13-1 at 14-18. Plaintiff appears to argue that, because there are no objective tests which can conclusively confirm a diagnosis of

---

[3] While Plaintiff maintains that there were six medical opinions that the ALJ improperly rejected, the Court notes that Plaintiff cites other opinions that predate the relevant period at issue, *See* ECF No. at 14 (citing Tr. 552, 565, 578); *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) ("The relevant period in this appeal is therefore . . . the date the SSI application was filed, to . . . the date of the ALJ's decision."). Thus, the Court only addresses the relevant opinions.

fibromyalgia, nor does a lack of positive, objective clinical findings rule out the presence of fibromyalgia, any subjective allegations of disability stemming from fibromyalgia must be accepted. *See id*. at 14-16. However, Plaintiff's argument mischaracterizes the ALJ's findings with respect to Plaintiff's fibromyalgia and overlooks that it is within the ALJ's discretion to credit or discredit subjective allegations of total disability.

While "the ALJ is required to take the claimant's reports of pain and other limitations into account, [he] is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation omitted). "It is the function of the [ALJ], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations and brackets omitted). When subjective allegations are at issue (as opposed to objective evidence), the discretion and role of the adjudicator as the factfinder becomes even more important to resolve the conflict. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We have, on the one hand, an absence of objective findings, an expressed suspicion of only functional complaints, of malingering, and of the patient's unwillingness to do anything about remedying an unprovable situation. We have, on the other hand, the claimant's and his personal physician's earnest pleas that significant and disabling residuals from the mishap of September 1965 are indeed present. . . . The trier of fact has the duty to resolve that conflict.").

Furthermore, contrary to Plaintiff's claim, the ALJ noted Plaintiff's symptoms and the clinical findings and found that Plaintiff's fibromyalgia was a medically determinable impairment. Tr. 13. *See Wright v. Comm'r of Soc. Sec.*, No. 21-157, 2021 WL 4452158, at *2 (2d Cir. Sept. 29,

2021). However, not every person with a fibromyalgia diagnosis is totally disabled: "Mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (brackets and citations omitted). Thus, even if a claimant had a diagnosis of fibromyalgia, objective findings such as normal strength, sensation, and range of motion still indicated that the condition was not totally disabling. *Id*. As is the case with any other condition, the ALJ's analysis of fibromyalgia proceeds based on a consideration of all the record evidence. *See* SSR 12-2p, 2012 WL 3104869, at *5-6. Moreover, objective evidence continues to be relevant for purposes of evaluating limiting effects, *i.e.*, functional limitations. *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.")

Here, the ALJ properly considered the opinions of Dr. Toor, Dr. Herbert, and Dr. Rodrigues in the context of the entire record and clearly explained his rationale for finding them not persuasive. Tr. 15-16, 18. With respect to Dr. Toor's opinion, the ALJ considered that Plaintiff's presentation at her examination with Dr. Toor was inconsistent with the rest of the record. Tr. 15, 18, 395-97. For example, Dr. Toor noted that Plaintiff used a cane that was "medically necessary" and had some gait disturbance. Tr. 396. However, other the treatment notes in the record do not show that Plaintiff had gait problems or that she uses a cane. Tr. 224, 407, 860, 964, 999, 1045. Thus, the ALJ reasonably found that Dr. Toor's opinion was inconsistent with the treatment evidence in the record. Tr. 18.

As the ALJ explained, he was more persuaded by Dr. Abueg's assessment that Plaintiff was capable of light work. Tr. 16, 18, 68-69. As both the ALJ and Dr. Abueg considered, Plaintiff's

fibromyalgia was a severe medically determinable impairment. Tr. 13, 65. When considering objective examination findings in the record as a whole, however, there was no indication that Plaintiff's fibromyalgia resulted in observable objective deficits that would preclude light work. Tr. 16-18, 69; 224, 407, 860, 964, 999, 1045. Furthermore, Dr. Abueg considered Dr. Toor's report alongside the other examination findings and still concluded that Plaintiff was capable of light work. Tr. 69.

The ALJ also reasonably found that the assessments of Dr. Rodrigues were not supported by her physical examination findings. Tr. 18. Dr. Rodrigues mentioned many diagnoses in her forms that she herself never treated and for which she had no specialty training; she did not support her responses with objective findings; and her own examinations did not corroborate totally disabling functional deficits. Tr. 16, 18, 536-39, 842-46, 860-61, 999-1000, 1044-45, 1106-07. Thus, the ALJ reasonably found Dr. Abueg's assessment was more persuasive. Tr. 18. Notably, around the same time that Dr. Rodrigues was completing forms indicating that Plaintiff could not perform essentially any physical functions, Plaintiff was discussing her interest in returning to school, joining the Y, riding bicycles, and continuing her ongoing volunteering activities. Tr. 775, 874, 876, 880, 883, 905.

Dr. Herbert similarly listed very significant limitations that were not supported by examination findings. As the ALJ noted, treatment notes from Dr. Herbert from July 2015 to November 2017 relating to Plaintiff's fibromyalgia indicate that she was maintained on Lyrica; and although, she reported pain in multiple joints, especially the lumbar spine, her condition was often described as stable and nonprogressive. Tr. 16, 406, 410, 412, 421, 425, 420. The ALJ also noted that Plaintiff's gait was not noted to be abnormal, and there was no mention of a cane being used or prescribed. *See id*. However, the ALJ also noted that in February 2017, Plaintiff stated she

was considering a mobility device due to difficulty standing/sitting/walking (Tr. 457), and in November 2017, she was looking into bariatric surgery (Tr. 406).

Finally, as previously mentioned, Plaintiff repeatedly told providers that she was thinking of returning to school to earn a degree, and/or looking for a job. *See*, *e.g.*, Tr. 306-07, 606, 905. Thus, Plaintiff essentially admits that she was contemplating a choice between working and filing her claim for SSI. *See*, *e.g.*, Tr. 790-91, 794, 800, 806. However, the definition of disability under the Act does not contemplate such a choice: a claimant can be found disabled only if she is unable to perform any substantial gainful activity due to medically determinable impairments. 42 U.S.C. § 1382c(a)(3)(A). Such is not the case here, as the record reflects that Plaintiff intended to keep her employment options open.

Based on the foregoing, the ALJ reasonably evaluated the conflicting opinion evidence, and substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the

Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence as a whole and reasonably found that Plaintiff's credibly established functional limitations were accounted for by the RFC for light work with appropriate restrictions, including limited to only simple tasks and only occasional changes, decision-making, and interaction with the public. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE